## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01008-COA

**SHEILA ANN JONES A/K/A SHEILA JONES GEORGE**                    APPELLANT

**v.**

**MICHAEL BOYD JONES A/K/A MIKE JONES**                    APPELLEE

DATE OF JUDGMENT:                 06/24/2016
TRIAL JUDGE:                 HON. J. LARRY BUFFINGTON
COURT FROM WHICH APPEALED:                 PONTOTOC COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:                 TOMMY WAYNE DEFER
ATTORNEY FOR APPELLEE:                 TIMOTHY BAXTER TUCKER
NATURE OF THE CASE:                 CIVIL - DOMESTIC RELATIONS
DISPOSITION:                 REVERSED, RENDERED AND
                 REMANDED: 03/06/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., BARNES AND FAIR, JJ.**

**GRIFFIS, P.J., FOR THE COURT**:

¶1.     Sheila Ann Jones brought a contempt action against Michael Boyd Jones ("Mike"), her former husband, based on his failure to comply with their divorce judgment. At the close of her case-in-chief, the Special Chancellor granted Mike's motion for a directed verdict and denied her petition. In addition, the Special Chancellor set aside the parties' divorce judgment and property-settlement agreement. We reverse, render, and remand for further proceedings as set forth in this opinion.

## FACTS AND PROCEDURAL HISTORY

¶2.     Mike and Sheila were married for almost thirty-four years. They filed a pro se Joint

Complaint for Divorce on February 6, 2012. They attached an "Agreement" to the complaint. The Agreement included provisions for child custody and support, property settlement, and spousal support, among other provisions.

¶3.     Their "Final Decree of Divorce - Irreconcilable Differences" (the "Judgment") was presented to Chancellor Jacqueline Mask. Chancellor Mask approved and executed the Judgment on May 4, 2012. The Judgment included the same provisions that the parties had agreed to and included in their Agreement.

¶4.     On June 3, 2015, Sheila filed a "Petition for Contempt of Court." Sheila claimed that Mike had failed to comply with the terms of the Judgment. Specifically, she asked that Mike be held in contempt and ordered to pay the amounts he owed under the Judgment.

¶5.     On November 16, 2015, the contempt matter was set for hearing before a special chancellor. Sheila's counsel made an oral motion for a continuance, based on matters that had been discussed by the attorneys and the chancellor in chambers. Neither the discussion nor the subject of the discussion was on the record. Mike objected to the continuance, and the chancellor denied the motion. Mike's attorney then announced that Mike would assert three affirmative defenses to the contempt petition: (1) the doctrine of laches, (2) the statute of frauds, and (3) lack of consideration. No written answer was filed.

¶6.     Sheila was the only witness who testified. She testified that their daughter prepared their divorce documents, Mike reviewed the documents, and Mike made changes to the Agreement. She also testified that Mike signed the complaint for divorce, the Agreement,

2

and the Judgment. The two provisions in the Agreement and Judgment relevant here are:

> The parties agree that [Mike] will pay [Sheila] for her share of [the] house located at 1442 Topsy Rd, Randolph, MS in the amount of $25,000.00 to be paid in monthly increments of $500.00 that are to begin when spousal support ends.

> . . . .

> The parties agree that [Mike] shall pay [Sheila] spousal support in the amount of $300.00 monthly beginning with the Final Decree and lasting until remarried, but lasting no more than twenty[-]four months.

¶7. Sheila testified that she was offered a new job in Jackson and needed money to help with the move. Sheila offered to voluntarily waive her rights to the remaining spousal-support payments and allow Mike to commence the $500 monthly payments for her "share" of the property, if Mike would pay her two months' worth of payments ($1,000) that month.

¶8. Sheila testified that Mike accepted her offer. Sheila offered two checks into evidence. The first check was dated "7-6-12." It was written by "Michael B. Jones" and was payable to "Sheila Jones" in the amount of $500. The remittance line stated "#4 House Payment." The second check was dated "7-31-12." It too was written by Mike and was payable to Sheila in the amount of $500. The remittance line read "4th of 50." Sheila then testified that Mike continued to make monthly payments of $500 until March of 2013.

¶9. Sheila testified that Mike paid a total of $6,000 before he stopped making these payments, and he was in arrears for a total of $19,000. Sheila also testified that she had paid attorney's fees of $1,800 to bring the contempt action.

¶10. On cross-examination, Mike's attorney asked Sheila about how they obtained

3

ownership of or an interest in their house. Sheila replied that, during their marriage, they had financial issues that caused them to lose their home. As a result, they entered an agreement with Mike's parents to purchase property from them.

¶11. Sheila testified that the agreement with Mike's parents was for Mike and Sheila to pay $500 per month for ten years to Mike's parents. Then, after Mike and Sheila had paid $60,000 over the ten years, Sheila said that the property would be theirs. Mike's attorney then asked whether the agreement with Mike's parents had been reduced to writing. Sheila testified that "[t]here was a little yellow sheet of paper where everything was written down," but she did not have a copy of the piece of paper with her. Sheila also admitted that she did not have a deed to the property.

¶12. After a few rebuttal questions, Sheila rested. Mike's attorney then said, "Your Honor, we would make a motion for directed verdict, this case be dismissed as not meeting the burden of proof of contempt." Then, the Special Chancellor immediately ruled:

> Well, in the question of contempt, I've heard the testimony, and because of the wording of the property settlement agreement, I'm satisfied that one of two things occurred. Either there was not a meeting of the minds or else a fraud was committed on the Court because there is a $25,000 amount, and it says for her share. It doesn't say for her interest in the house. I don't think there's any question that the parties, whether they had written documents or not, contemplated that there was something going to be paid through the divorce for whatever interest that [Sheila] may have had, whether it was for the house or for some other basis. However, the statute of frauds does say that we've got to have it in writing if it doesn't occur within 15 months or that's the way this Court interprets it. So therefore, this Court finds that as far as contempt, the motion to dismiss should be granted.
>
> However, having heard what I've heard now, the Court feels that based on the

4

-- based on the testimony of [Sheila]. . . I understand I have not heard Mr. Jones' testimony, but I don't think I've got to hear it since he's filed now an answer, whether it was ore tenus or whatever saying that he doesn't owe anything on there. This Court has no -- in order to do equity and to comply with what this Court feels the law in the State of Mississippi is, that there was not a true meeting of the minds, or as I've said, there was a fraud committed on the Court by representing something that wasn't there with an amount, therefore, I'm going to set aside the divorce and property settlement agreement. I will address one matter that -- based on the answer and testimony, of course, the decree itself, there's no question he's paid the $6,000. And there would have been $4,800 due under the alimony provision. Since I've set that aside, it doesn't mean quite as much except for whenever the next judge hears this, it should be allowed to credit for the alimony, not for anything else because of the fact that he owed it. And even though she, to her credit, said that she told him he didn't have to pay it as long as he paid for the house, since that's in question now, he would have owed that $300 a month for those 16 months before she got remarried. So, I'm saying all that, you either give him $6,000 credit for the house or you give him $4,800 credit for the alimony. He can't have both. Likewise, the motion for contempt is asking for the $19,000. And just so it's crystal clear, as best this Court could determine, if, in fact, I felt I could have found that they owned the property and he owed her the $25,000 as a result of the ownership of that property, there's only $9,000 that would have been owed, not the entire $25,000. Because it allowed him to pay it at $500 a month. But he was under no obligation to pre-pay it. So that -- and, of course, that would need to be addressed by the judge once he hears the testimony as to making an equitable distribution. And also, just for the record, based on the fact that there was not a meeting of the minds, it's quite obvious to me that since there is this discrepancy, there could not have been a finding that distribution of the property was fair and equitable as required by the law in the State of Mississippi. So, therefore, I'm going to modify the pleadings to conform the testimony and convert this . . . back to an original divorce proceeding for an equitable distribution of the property and for any other alimony or other such as may have been . . . due at the time the first one was done.

¶13. On June 24, 2016, the Special Chancellor entered an order that read:

This day this cause came before the Court on the petitioner's Petition for Contempt of Court, and the Court having reviewed the court file, having heard the arguments of Counsel as well as having considered the sworn testimony

5

presented in open court, does hereby dismiss the contempt action on the grounds of the statute of fraud. Furthermore, the Court orders and finds there was "no meeting of the minds" between the Parties at the time they executed their property settlement agreement and therefore no fair and equitable distribution of property. The Court therefore orders and sets aside the divorce decree and property settlement agreement previously entered here by the Parties therefore. This Order is hereby certified to be a final judgment pursuant to Rule 54(b) of the Mississippi Rules of Civil Procedure.

It is from this order that Sheila now appeals.

ANALYSIS

*I.    Dismissal of Sheila's Contempt Action*

¶14.    First, Sheila argues that it was error for the Special Chancellor to dismiss her contempt action on the grounds of the statute of frauds.

¶15.    Before we discuss this issue, we note that when Sheila rested her case-in-chief, Mike's attorney made a motion for "directed verdict." In a bench trial, the proper motion to be made at this time is a ***motion for involuntary dismissal*** under Rule 41(b) of the Mississippi Rules of Civil Procedure. Rule 41(b) is the authority for an involuntary dismissal, and it provides:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court may then render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

Mississippi Rule of Civil Procedure 50(a) is the authority for a directed verdict; it is properly made at a jury trial.

6

¶16. In *Crowell v. Butts*, 153 So. 3d 684, 687 (¶6) (Miss. 2014), the supreme court ruled:

> A motion for directed verdict granted by the court, sitting without a jury, is procedurally a dismissal on the merits under [Rule] 41(b). This Court reviews a grant or denial of a Rule 41(b) motion to dismiss under the substantial evidence/manifest error standard. In considering a motion to dismiss, the trial judge should consider the evidence fairly, as distinguished from in the light most favorable to the nonmovant, and should dismiss the case if it would find for the movant. The court must deny a motion to dismiss only if the judge would be obliged to find for the plaintiff if the plaintiff's evidence were all the evidence offered in the case.

(Internal citations and quotation marks omitted).

¶17. Sheila's contempt petition was based on the Judgment, which had been approved and signed by Chancellor Mask. At the hearing, Sheila testified that Mike had agreed to pay her certain amounts under the Judgment, he had not paid the full amount due, and he owed her the principal sum of $19,000, plus attorneys' fees.

¶18. In *A.M.L. v. J.W.L.*, 98 So. 3d 1001, 1019 (¶50) (Miss. 2012), the supreme court stated:

> When the parties have reached agreement and the chancery court has approved it, in the absence of fraud or overreaching, this Court will enforce [the agreement]. However, a citation of contempt is proper only when the contemnor has willfully and deliberately ignored an order of the court. [T]he inquiry in a contempt proceeding is whether or not the order was violated, whether or not it was possible to carry out the order of the court, and if it was possible, whether or not such violation was an intentional and willful refusal to abide by the order of the court.

(Internal citations and quotation marks omitted).

¶19. The Special Chancellor ruled that the statute of frauds was a sufficient defense to Sheila's claim of contempt. Under Mississippi Code Annotated section 15-3-1(d), the statute

of frauds provides that an action shall not be brought upon any agreement which cannot be performed within fifteen months of its making unless the agreement shall be in writing and signed by the party to be charged. Sheila claimed that she was entitled to $19,000 that Mike agreed to pay in the Agreement and the Judgment. It was undisputed that Mike signed the Agreement, and the Agreement was confirmed by Chancellor Mask in the Judgment. We find that the Agreement and the Judgment complied with the writing and signature requirements of section 15-3-1(d).

¶20. Yet, the Special Chancellor determined that he could go beyond the Judgment and consider whether there was a written agreement among Mike's parents and Sheila and Mike. This obligation was considered and finalized between the parties in the Agreement and the Judgment. Mike did not and has not filed a motion under Mississippi Rule of Civil Procedure 60 to challenge the Judgment. Moreover, there were no changes in the parties' circumstances nor did Mike file any pleadings that attacked the Judgment because of a lack of a meeting of the minds or because a fraud was committed on the court.

¶21. It is clear that the Special Chancellor questioned whether there was a legally enforceable contract that gave Sheila and Mike an interest in the property, which would make the property marital and subject to equitable distribution. This issue had been resolved in the Judgment. The Agreement was an enforceable contract that satisfied the statute of frauds. The Special Chancellor erroneously went beyond the Judgment.

¶22. Thus, we find that the Special Chancellor committed manifest error and was clearly

8

erroneous in dismissing Sheila's contempt action. We reverse and remand Sheila's contempt action for further proceedings.

## II. Setting Aside the Divorce Decree

¶23. Next, after only considering Sheila's testimony in the contempt action, the Special Chancellor ruled that Mike and Sheila's divorce should be set aside. Mississippi Code Section 93-5-31 provides:

> The judgment of divorce from the bonds of matrimony may be revoked at any time by the court which granted it, under such regulations and restrictions as it may deem proper to impose, upon the joint application of the parties, and upon the production of satisfactory evidence of their reconciliation.

¶24. There is simply no authority for the Special Chancellor's decision to set aside the divorce decree. Neither party asked the Special Chancellor to set aside the divorce decree. Rather, the parties were before the court only on a contempt petition. Mike made a motion for a directed verdict under Rule 50(a). The only relief allowed under Rule 50(a) was for the chancellor to either grant the motion and dismiss Sheila's petition or deny the motion and allow the contempt claim to proceed. Certainly, it was beyond the Special Chancellor's authority to set aside the divorce judgment.

¶25. Therefore, we find that the Special Chancellor was manifestly wrong and clearly erroneous when he set aside the Judgment and Agreement. The Special Chancellor's June 24, 2016 order that set aside the Judgment and the Agreement is reversed and rendered, and the Judgment and the Agreement are reinstated.

¶26. Further, the Special Chancellor was in error to find that "there was no fair and

9

equitable distribution of property." This finding is directly contrary to Chancellor Mask's Judgment, and neither Sheila nor Mike had challenged this issue in this action. Certainly, neither Sheila nor Mike had pled or asked the Special Chancellor to set aside their divorce decree. In this decision, the Special Chancellor went far beyond the matters that were placed before the chancery court in this action.

¶27. The Special Chancellor further determined that Sheila and Mike had failed to reach a meeting of the minds in the formation of their agreement. This determination is contrary to the evidence presented. Sheila presented the Judgment, she testified that Mike had complied with the Judgment in paying monthly spousal support, and that Mike had agreed to begin paying $500 per month for Sheila's property interest. The Special Chancellor's order is reversed and rendered, and this case is remanded for further proceedings consistent with this opinion.

¶28. **REVERSED, RENDERED AND REMANDED**.

**LEE, C.J., IRVING, P.J., BARNES, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**